IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parental Rights to: | ) | No. 38179-0-III |
| | ) | |
| P.P.,† | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| KENDRA R. MACKEY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent, | ) | |
| | ) | |
| ERICH L. PRAZAK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Erich Prazak appeals various aspects of an amended

parenting plan. He argues the trial court erred by (1) allowing inadmissible hearsay from

a domestic violence (DV) assessment to influence the parenting plan, (2) ordering him to

comply with a DV assessment despite never reading it, (3) ordering that he undergo a

---

† To protect the privacy interests of the minor child, we use his initials throughout
this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms
for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012),
https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber
=2012_001&div=III.

second DV assessment, (4) placing the mother in discretionary control over his supervised visitation time, (5) not addressing how or when he could normalize his parenting time, and (6) entering findings of fact that are unsupported by the record.

We conclude (1) the trial court did not rely on the unadmitted DV assessment, (2) the trial court erred by ordering Mr. Prazak to comply with the assessment's recommendations beyond what he had agreed to do, (3) the trial court's oral and written comments do not require a second DV assessment, (4) the trial court erred by giving Ms. Mackey discretionary control over Mr. Prazak's supervised visitation time, (5) the procedure for minor modifications of parenting plans are plainly set forth in RCW 26.09.260(5), and (6) the challenged findings of fact are either supported by substantial evidence or made immaterial because Mr. Prazak mostly agreed to follow the DV assessment's recommendations.

We affirm in part and reverse in part. We remand for the trial court to amend paragraphs 4 and 14 of the amended parenting plan consistent with this opinion.

FACTS

Erich Prazak and Kendra Mackey had one child together in June 2010. The parties separated a few years later and litigated their parenting plan.

2

No. 38179-0-III
*In re Parental Rights to P.P.*

*First parenting plan*

In January 2013, the trial court entered a final parenting plan under which the child was to reside with Ms. Mackey and visit Mr. Prazak every other weekend. The basis for restricting Mr. Prazak's time was RCW 26.09.191(3): "The father's involvement or conduct may have an adverse effect on the child's best interests because of the existence of . . . [a] long-term impairment resulting from drug, alcohol, or other substance that interferes with the performance of parenting functions." Clerk's Papers (CP) at 7. "Other Provisions" listed in the order include a prohibition on Mr. Prazak's alcohol consumption, permitting Ms. Mackey to request he submit to an EtG[1] test if she suspects he has used alcohol, and suspending visits pending further order of the court if he tests positive for alcohol. CP at 12.

Mr. Prazak saw the child on a semi-regular basis pursuant to the parenting plan. The parties dispute whether Ms. Mackey ever attempted to use the EtG testing provision during this period.

---

[1] Ethyl glucuronide testing is used to monitor alcohol use.

3

*Reconciliation, second child, and events preceding petition for modification*

The parties reconciled in September 2015. Ms. Mackey became pregnant shortly thereafter, and they moved in together in November of that year.

In May 2016, Ms. Mackey called the police on Mr. Prazak after an argument at their home. Mr. Prazak was arrested for disturbing the peace, which was also in violation of a provision of the 2013 parenting plan. The charges were ultimately dismissed.

On June 20, 2016, the parties had their second child. In August 2016, Ms. Mackey found a methamphetamine pipe in their home; Mr. Prazak moved out of the house. From then on, Mr. Prazak saw the children sporadically. Although the 2013 parenting plan remained in place, Mr. Prazak said he did not see the older child as provided for in the plan, and Ms. Mackey prevented him from seeing both children on Thanksgiving in 2017. This frustrated Mr. Prazak, who then sent numerous angry text messages about Ms. Mackey to his sister, Megan Shober. Ms. Shober shared the messages with her husband, a police officer, and law enforcement became involved.

In December 2017, based on the threatening text messages, Ms. Mackey sought a temporary protection order against Mr. Prazak. Mr. Prazak ultimately pleaded guilty to harassment with a domestic violence enhancement. As a result of that plea, Mr. Prazak was prohibited from contacting Ms. Mackey directly and was required to go through third

4

parties to facilitate visitation with the children. The no-contact order was to last two years, until August 2020.

In June 2018, Mr. Prazak was arrested for driving under the influence (DUI). He entered into a deferred prosecution in September 2019. His treatment plan was created on November 8, 2019, set to last two years.

*Petition to modify the parenting plan*

On May 6, 2019, Ms. Mackey filed a petition to modify the parenting plan. Her proposed plan listed reasons for putting limitations on Mr. Prazak as abandonment, neglect, emotional abuse, and domestic violence. She alleged Mr. Prazak has long-term problems with drugs and alcohol, as well as emotional or physical problems, both of which get in the way of his ability to parent. She also indicates that Mr. Prazak pleaded guilty to harassment domestic violence on August 6, 2018, with herself as the victim.

Ms. Mackey requested Mr. Prazak complete an alcohol evaluation and comply with all treatment recommendations, as well as submit to and pay for random testing. She asked that Mr. Prazak be restrained from ingesting alcohol at any time. Her proposed plan provides: "As a result of the father's DUI in 2018, the father's time should continue to be suspended until such time as he complies with the requirements of this parenting plan." CP at 21. Relevant here, her proposed plan provides:

> ERICH PRAZAK shall enroll in a domestic violence perpetrator program certified by the state of Washington and file with this Court proof of enrollment of such and furnish a copy to KENDRA MACKEY . . . .
> ERICH PRAZAK shall comply with all recommendations and file with the court a copy of the assessment and proof of compliance with the treatment program.

CP at 22.

After listing more conditions, the plan concludes: "Once Eric[h] Prazak complies and completes the above, he may return to Court and seek a minor modification of the parenting plan. Until such time, all contacts remain suspended." CP at 22.

On June 20, 2019, Mr. Prazak filed a response, disagreeing that a major modification or restraining order was necessary. He agreed "in part" to Ms. Mackey's request for a minor change. CP at 29.[2]

On August 6, 2019, a commissioner found adequate cause on Ms. Mackey's petition due to Mr. Prazak's domestic violence. The court ordered

> Mr. Prazak to submit to a domestic violence perpetrator evaluation. Mr. Prazak to advise through his counsel who is going to conduct the domestic violence evaluation. Ms. Mackey to provide collateral information to the evaluator with written info[rmation] limited to what has been filed in the court file and the evaluator to communicate with Ms. Mackey per the [Washington Administrative Code].

---

[2] Mr. Prazak's proposed parenting plan is not in our record; we know from his testimony that he stipulated to a domestic violence finding but asked the court to remove the finding of a long-term impairment due to substance use.

> Matter to be reviewed after receipt of domestic violence perpetrator
> evaluation and receipt of the terms of deferred prosecution.

CP at 32.

*Trial*

A one-day trial was held on August 18, 2020. Both Mr. Prazak and Ms. Mackey testified. Although Mr. Prazak's attorney indicated that he intended to call Ginger Johnson, the domestic violence counselor, Ms. Johnson did not appear for trial.

*Mr. Prazak*

Mr. Prazak explained that he sent a string of violent text messages about Ms. Mackey to his sister because he was frustrated that he was unable to see his children. He admitted the messages contained threats to kill Ms. Mackey if she did not give him time with his children, but maintained that he did not intend for Ms. Mackey to see the messages and he "deeply regret[s] sending those texts." Report of Proceedings (RP) at 12. He ultimately pleaded guilty to a reduction of misdemeanor telephone harassment in August 2018. The resulting probationary sentence included a two-year, no-contact order.

Mr. Prazak admitted he was arrested for his third DUI in June 2018. His other two DUIs occurred in 2003 and 2012. He acknowledged he had an alcohol problem in the past but did not believe he still had a problem at the time of trial. As a result of the DUI,

he entered into a deferred prosecution that included a two-year treatment plan including intensive outpatient alcohol treatment.

Mr. Prazak has type 1 diabetes and acknowledges that drinking alcohol with this condition is not recommended. He admitted that he nonetheless continued to drink since 2009 but explained these were "poor choices" that he has "paid the price for . . . ." RP at 32.

Mr. Prazak completed a domestic violence perpetrator assessment "as part of this family law case." RP at 19. Mr. Prazak said this was a voluntary assessment. His lawyer acknowledged that "there were some problems in getting Ms. Johnson" to trial, but he suspected that the trial court had read the report. RP at 37.

*Ms. Mackey*

Ms. Mackey testified that Mr. Prazak was required to do a domestic violence assessment with Ms. Johnson after she filed this petition. She provided Ms. Johnson with "collateral information" including violent voicemails and death threats, but she did not contact Ms. Johnson again after the report was authored. RP at 149. Ms. Mackey eventually saw Ms. Johnson's report through her attorney and agreed that Mr. Prazak should be required to follow the recommendations. She later confirmed that her parenting

plan proposes as much and she believes he has been "submitting to that program."

RP at 162.

Ms. Mackey noted that Mr. Prazak had rarely seen their younger child in the past two years and had otherwise not made efforts to see either child despite having the opportunity to do so. She testified that Mr. Prazak had never disclosed to her any mental health issues and, when asked why she wanted the court to find he has emotional problems that interfere with his ability to parent, she indicated that he has "long-term substance abuse." RP at 156. Ms. Mackey believes Mr. Prazak minimizes his drinking problem, which used to cause angry outbursts in front of the children.

*Mr. Prazak's limited agreement to follow the DV assessment's recommendations*

During closing, counsel for Mr. Prazak addressed the recommendations of the DV assessment performed by Ms. Johnson and complying with her recommendations:

> MR. NELSON: . . . I'm glad there's an agreement that my client can continue the domestic violence perpetrator program. I do have to correct [opposing counsel] in terms of what my client proposed, and that was that he complete the domestic violence perpetrator program with Ginger Johnson. It was not that he be required to follow all recommendations [of] Ginger Johnson . . . .
> THE COURT: So what are you asking me to do with respect to the recommendations from evaluator Johnson? Are you asking me to structure that?
> MR. NELSON: Sure. She's already set up the domestic violence perpetrator program for my client, and he's complied with that, with the classes that she has set up, . . . he will comply with for up to the 52-week

9

period of the time. . . . I'm asking that he complete the program that has been set up . . . .

THE COURT: Not include the recommendations?

MR. NELSON: . . . I would be looking for if Ms. Johnson was going to make a recommendation as to a mental health issue, I would ask Ms. Johnson whether she has the education and training of making that type of evaluation. She's certainly been involved, certainly, in setting up domestic violence perpetrator programs, she's certified by the State of Washington to set up those programs, . . . but I don't know that that gives her the ability to make medical or mental health diagnoses and I guess I need to hear more from her in terms of that issue.

RP at 192-94.

After closing arguments, the court took the matter under advisement.

*Oral ruling*

On August 27, 2020, the court issued its oral ruling. The court noted the governing statutes required considering the best interests of the children and said it would "tak[e] into account domestic violence issues that were present in this case and the treatment of the parents in order to effectuate a positive outcome for the children." RP at 201.

With regard to parental limitations under RCW 26.09.191, the court explained, "This really was the substance of this case" and found that Mr. Prazak "has a long-term substance abuse issue that interferes with his ability to parent and that's definitely evident. It's been a long-term issue. He was assessed formally and he was essentially

10

diagnosed with severe alcoholism and some cannabis use." RP at 204. The court

addressed Mr. Prazak:

> You have been in treatment for seven months and I certainly respect the fact
> that you have taken positive steps . . . , however, you're early on and I did
> detect some minimization. I had some credibility issue with the way you
> testified and didn't think you were completely honest with the Court in the
> areas of your past drug use and the extent of that . . . .

RP at 204.

Conversely, the court found Ms. Mackey "to be very credible" and thought she

testified "honestly" regarding the parties' relationship and parenting history. RP at 204.

It found Ms. Mackey had "good judgment" without "any motivation for vindictiveness or

trying to just keep the children away" from Mr. Prazak, and that Ms. Mackey has the

children's best interests at heart. RP at 205.

The court then moved on to discuss RCW 26.09.260 and found "the present

environment as described in the parenting plan is detrimental for the child's physical,

mental, and emotional health and the harm caused by the changes are outweighed by the

advantage of modification . . . ." RP at 205. The court continued:

> [A] final parenting plan had unsupervised visitations and we've had a
> demonstrated history of substance abuse and interactions with the criminal
> justice system as well as domestic violence subsequent to that parenting
> plan being entered. So that finding is based on the [RCW 26.09].191
> factors noted.

RP at 205.

The court also found Mr. Prazak has emotional and physical issues "that really interplay with the substance abuse issue that affect the children as well." RP at 206.

The court noted Mr. Prazak's criminal history, including three DUI convictions, as well as the August 2018 conviction for "threat to kill/domestic violence" against Ms. Mackey that the court considered when imposing limitations. RP at 206-07. The court clarified that its finding was that domestic violence occurred in the child's presence.

The court continued:

> I'm also going to order that he continue with his deferred prosecution treatment and that will basically satisfy the requirement for the substance abuse evaluation and follow-up treatment as it relates to substance abuse treatment for this parenting plan.
> I'm also going to order, and I know this wasn't in evidence but there was a request. There was a domestic violence evaluation by Ms. Ginger Johnson. The Court didn't see the evaluation but there was a request to follow *those recommendations* and to the extent it doesn't conflict with the deferred prosecution, supplanting the treatment requirement, I will order that *those recommendations* be followed for[3] the DV assessment. I'm also going to order that copies be provided to the mother of any reports/notices, and that she has an opportunity to provide collateral information.

RP at 209-10 (emphasis added).

---

[3] We suspect "for" is a stenographic error; "per" makes more sense.

The court encouraged Mr. Prazak to maintain his sobriety and suggested that this could provide an avenue for him to come back to court for a modification. It then ordered Mr. Prazak a minimum of two-hour supervised visitations twice per month or more at the discretion of Ms. Mackey.

On April 2, 2021, the trial court entered the "Final Order and Findings on Petition to Change a Parenting Plan." CP at 36-38. The order approves Ms. Mackey's request for a major change in the 2013 parenting plan and incorporates the oral ruling and parenting plan entered.

The amended parenting plan indicates the reasons for limiting Mr. Prazak's time under RCW 26.09.191 include "a history of domestic violence," "a long-term emotional or physical problem that gets in the way of his ability to parent," "a long-term problem with drugs, alcohol, or other substances that gets in the way of his ability to parent," and a lack of emotional ties with the younger child. CP at 48.

The amended plan provides that Mr. Prazak will have "residential time two times per month for up to two-hour visitations *or*[4] *at the discretion of the mother* but a minimum of two per month" and the recommendations from Ms. Johnson's domestic violence evaluation were to be followed to the extent they do not conflict with the

---

[4] We suspect the word "more" is missing here.

deferred prosecution treatment requirements. CP at 49 (emphasis added). It further

provides, "If the [random EtG] test is positive, the father's contact shall be suspended

pending further order of the Court *or at the discretion of mother*." CP at 53 (emphasis

added).

> It also incorporated, verbatim, the trial court's oral ruling:

> There was a domestic violence evaluation by Ms. Ginger Johnson but it was not offered at trial. The Court didn't see the evaluation but there was a request to follow *those recommendations* and to the extent it doesn't conflict with the deferred prosecution, supplanting the treatment requirement, *those recommendations* shall be followed for the DV assessment. Copies of the assessment shall be provided to the mother as well as any reports/notices. Kendra Mackey has an opportunity to provide collateral information to Ms. Johnson.

CP at 49 (emphasis added).

> Mr. Prazak timely appeals.

## ANALYSIS

ISSUES 1 AND 2: INVITED ERROR

Mr. Prazak argues the trial court erred in relying on the DV assessment, which was

not admitted, and by requiring him to follow its recommendations, even though the trial

court had not read them. We agree, but only in part.

Under the doctrine of invited error, a party may not materially contribute to an

erroneous application of law and then complain of it on appeal. *In re Dependency of*

*A.L.K.*, 196 Wn.2d 686, 694, 478 P.3d 63 (2020).  To determine whether the doctrine

applies, the court considers whether the complainant affirmatively assented to the error,

materially contributed to it, or benefited from it.  *In re Pers. Restraint of Coggin*, 182

Wn.2d 115, 119, 340 P.3d 810 (2014) (plurality opinion).

Here, Mr. Prazak both assented to and materially contributed to much of the

purported error.  In closing argument, he agreed to complete the 52-week DV perpetrator

program with Ms. Johnson.  And with one exception, he agreed to comply with her

treatment recommendations.  The one exception was he would not comply with treatment

recommendations related to mental health issues.

To the extent paragraph 4 of the parenting plan requires Mr. Prazak to comply with

treatment recommendations related to mental health issues, the trial court erred.

ISSUE 3: REQUIRING SECOND DV ASSESSMENT

Mr. Prazak contends the trial court erred by requiring him to submit to a second

DV assessment with Ms. Johnson.

The trial court's written order in this regard confounds us.  From our review of the

oral ruling and written order, it appears the trial court intended for Mr. Prazak to follow

the recommendations in Ms. Johnson's *existing* DV assessment.  It explicitly ordered Mr.

Prazak to follow "those recommendations," referring to the existing recommendations.

CP at 49.  Our conclusion is buttressed by the fact that neither party requested a second

assessment.  Rather, both parties agreed for Mr. Prazak to comply with the

recommendations of Ms. Johnson's existing DV assessment.  We conclude the trial court

did not intend for Mr. Prazak to obtain a second DV assessment from Ms. Johnson.

ISSUE 4: DELEGATING DISCRETION OF PARENTING TIME

Mr. Prazak contends the trial court erred in granting Ms. Mackey discretion to

control his supervised visitations.  We agree.

We have noted:

> [RCW 26.09.260] explicitly requires that a trial court consider and make
> any modifications to a parenting plan based on what is in the best interests
> of the child.  A trial court cannot delegate its authority to modify a
> parenting plan.  Modifications are any increases or reductions to the rights
> originally granted to a party.  Any modification, no matter how slight,
> requires an independent inquiry by the trial court.

*In re Marriage of Coy*, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011) (emphasis omitted)

(footnote and citations omitted).

It is sound public policy to require a court, rather than a parent, to make

determinations on modifying parenting plans because "[a] parent of a child cannot make

an independent, *objective* judgment about what is in the best interests of that child,

especially with regard to an ex-spouses's parental rights regarding that child."  *Id.* at 806.

The written order provides that Mr. Prazak is "to have residential time two times per month for up to two-hour visitations *or at the discretion of the mother* but a minimum of two per month." CP at 49 (emphasis added). It also provides, "If the test is positive [for alcohol], the father's contact shall be suspended pending further order of the Court *or at the discretion of* [*the*] *mother*." CP at 53 (emphasis added).

To the extent the trial court gave Ms. Mackey the discretion to alter or suspend Mr. Prazak's visitation time, it violated our precedent. She cannot maintain a neutral, objective viewpoint on what is in the best interests of her children in relation to Mr. Prazak—not only do they have a history of domestic violence, but Mr. Prazak testified that his threats to kill Ms. Mackey followed her decision to withhold visitation.

The trial court intended to trigger the suspension of visitations if Mr. Prazak relapses. This is an appropriate remedy given the parties' history and the court's findings. However, it is not appropriate to permit Ms. Mackey to determine whether Mr. Prazak relapses and to suspend his visitation.

ISSUE 5: NORMALIZING PARENTAL VISITS

Mr. Prazak argues the trial court erred by not addressing how or when he could normalize his parenting time, even though it appeared to be the court's intent that normalization of visits could occur. We disagree.

17

No. 38179-0-III
*In re Parental Rights to P.P.*

Mr. Prazak needs to look no further than RCW 26.09.260(5) to understand how he might "normalize" his visits: A petition for minor modification.

DISPUTED FINDINGS OF FACT

Mr. Prazak challenges various findings of fact. All but one of these challenges have been addressed by our resolution of the issues above.

We review disputed findings of fact for substantial evidence, viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to Ms. Mackey. *In re Marriage of Zigler*, 154 Wn. App. 803, 812, 226 P.3d 202 (2010).

*Emotional and physical problems*

Mr. Prazak disputes the trial court's finding that he has emotional and physical problems to support the limitations, arguing that the court failed to actually make such a finding. Specifically, he argues Ms. Mackey agreed that he does not have an emotional problem and there is no evidence of a physical handicap. We disagree.

We quote the trial court's findings in this regard:

> *I'll also make a finding that there are emotional and physical issues that the father has* that really interplay with the substance abuse issue that affect the children as well. So *I will make a finding that he has emotional and physical problems*. The Court heard lawyer testimony with respect to diabetes again and some anger issues that I think were all fueled likely by substance abuse so it's all tied together, but the pattern of behavior that was in the period of time when you were actively using is consistent with that type of use. Then I also think there was that past use of illicit drugs that

18

was not fully acknowledged by your testimony. Again, there was a minimization detected.

RP at 206 (emphasis added).

Further, this finding is supported by substantial evidence. Mr. Prazak acknowledged that he has diabetes, yet still continued to drink alcohol—likely exacerbating his physical condition.

Although Mr. Prazak did not use the word "emotional" when describing his behavior, he acknowledged that he became exceedingly angry in 2017 before he sent threats about Ms. Mackey to his sister. Ms. Mackey testified that Mr. Prazak would get angry, yell at his children, and throw things—this behavior occurred when he was drinking, which he minimized. Ms. Mackey did not testify that Mr. Prazak did not have an emotional problem—she simply stated that he had never disclosed any diagnosed mental health issues.

We conclude the trial court made the challenged finding and substantial evidence supports it.

19

No. 38179-0-III
*In re Parental Rights to P.P.*

CONCLUSION

We affirm in part, but remand for the trial court to amend paragraphs 4 and 14 of

the amended parenting plan consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Staab, J.

20